# STATE OF MICHIGAN

# COURT OF APPEALS

MALEK HMEIDAN,

        Plaintiff,

and

VHS OF MICHIGAN, INC., doing business as
DETROIT MEDICAL CENTER, and SUMMIT
PHYSICIANS GROUP, PLLC,

        Intervening Plaintiffs,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant-Appellee,

and

PROGRESSIVE MICHIGAN INSURANCE
COMPANY, also known as PROGRESSIVE
CASUALTY INSURANCE COMPANY,

        Defendant-Appellant.

FOR PUBLICATION
November 27, 2018
9:00 a.m.

No. 338707
Wayne Circuit Court
LC No. 15-007238-NF

Before: MURRAY, C.J., and METER and GLEICHER, JJ.

MURRAY, C.J.

      Defendant Progressive Michigan Insurance Company appeals by leave granted[1] the May 2, 2017 Wayne Circuit Court order embodying the trial court's ruling that defendant State Farm

---

[1] *Hmeidan v State Farm Mut Auto Ins Co,* unpublished order of the Court of Appeals, entered October 17, 2017 (Docket No. 338707).

-1-

Mutual Automobile Insurance Company was excluded from the order of priority for first-party no-fault benefits in the current lawsuit filed by plaintiff Malek Hmeidan, and that Progressive is the highest priority insurer for plaintiff's claim for no-fault benefits. We reverse and remand for further proceedings.

## I. BACKGROUND FACTS

This lawsuit arises from a collision between a motorcycle and motor vehicle. Plaintiff claims that he was "test-driving" a motorcycle for sale by "an associate."[2] While plaintiff was operating the motorcycle, a car failed to stop at a stop sign and turned in front of him. Once plaintiff applied the brakes, the motorcycle began to skid and collided into the back of the car. The operator of the car immediately fled the scene. Progressive insured the motorcycle involved in the accident.

At the time of the accident, plaintiff lived at his mother's house located at 2708 Springwells in Detroit, but he sometimes stayed at his brother's house in Melvindale. Plaintiff did not own a motor vehicle at the time of the accident, although his mother, Aida Hmeidan, owned two motor vehicles that were insured by State Farm. The State Farm policy booklet contains language stating that it provided personal protection insurance (PIP) coverage for the insured "or any *resident relative*." The policy booklet pertinently defines "resident relative" to mean "a *person*, other than *you*, domiciled in the same household with the first *person* shown as a named insured on the Declarations Page and who is: 1. related to that named insured or his or her *spouse* by blood, marriage, or adoption . . . ."

### A. THE 2013 LAWSUIT

In March 2013, plaintiff filed a complaint seeking no-fault and uninsured motorist benefits against Farmers Insurance Exchange as the assigned carrier[3] and against State Farm based on the insurance policy issued to his mother.

According to Progressive, on March 19, 2014, State Farm filed a motion for summary disposition pursuant to MCR 2.116(C)(10), asserting that plaintiff was not a "resident relative" of Aida (its insured) at the time of the accident since plaintiff and Aida "were primarily living at different locations," which precluded plaintiff from "resident relative" status. State Farm relied on plaintiff's deposition testimony that he primarily lived at the Detroit residence and that he occasionally stayed at his brother's home in Melvindale, as well as the deposition testimony of plaintiff's mother and brother that prior to the accident, Aida Hmeidan was living at her son's home in Melvindale during the week and only stayed at her residence in Detroit for two days.

---

[2] There was significant evidence that the motorcycle was stolen, but that issue is not relevant to the issues raised on appeal.

[3] Apparently, plaintiff filed a claim with the Michigan Assigned Claims Plan, which assigned Farmers to handle the claim. Farmers paid some benefits to plaintiff, but at some point, stopped doing so.

According to Progressive, the trial court denied State Farm's motion, "finding a question of fact existed on the issue of whether plaintiff was a resident relative, i.e., domiciled with Aida on the date of the underlying accident."

Farmers subsequently filed a cross-claim against State Farm, and third-party claims against Allstate Insurance Co and Progressive, seeking a declaratory judgment that one of the entities was the highest in the order of priority to pay PIP benefits and seeking reimbursement of the benefits it had already paid to plaintiff. Eventually, Farmers filed a motion for summary disposition pursuant to MCR 2.116(C)(10) on the grounds that State Farm, Allstate, or Progressive was the priority insurer. Progressive filed a response and sought summary disposition in its favor on the grounds that plaintiff was covered under the State Farm policy. The trial court denied Farmers's motion for summary disposition and adjourned Progressive's motion for summary disposition to allow supplemental briefs. In its supplemental brief, State Farm asserted that the trial court had previously ruled that there was a genuine issue of material fact as to plaintiff's residence and therefore, this finding must be applied to Progressive's motion.

Following a settlement conference, the parties agreed to dismiss plaintiff's claims against Farmers. Plaintiff's action against Farmers, and Farmers's action against State Farm and Progressive, were dismissed with prejudice; plaintiff's claims and those of intervening medical providers were dismissed without prejudice; and Progressive and State Farm agreed to waive the "one-year back rule" under MCL 500.3145 if plaintiff refiled the action.

## B. THE CURRENT LAWSUIT

On June 3, 2015, plaintiff filed the current action against State Farm and Progressive, claiming that he was entitled to first-party and uninsured motorist benefits. The case was assigned to the same judge that presided over the 2013 lawsuit. During the course of the proceedings, the parties filed several motions for summary disposition, one of which the trial court granted, and dismissed plaintiff's claims for uninsured motorist and underinsured motorist benefits against Progressive.

Progressive filed a motion for summary disposition pursuant to MCR 2.116(C)(10), asserting that MCL 500.3114(5) sets forth the order of priority rule for individuals who sustain accidental bodily injury while operating a motorcycle that is involved in a motor vehicle accident, and that State Farm is the highest priority insurer because his mother maintained a policy of insurance with State Farm and plaintiff and his mother were domiciled in the same household at the time of the accident. Therefore, Progressive argued, State Farm is "the motor vehicle insurer of the operator of the motorcycle involved in the accident." In response, State Farm asserted that the trial court had previously denied Farmer's summary disposition motion (in the prior lawsuit) on the issue of domicile and ruled the domicile of plaintiff was a question of

-3-

fact to be decided by the finder of fact.[4]  The register of actions indicates that the trial court denied the motion.

Leading up to the scheduled trial date of April 10, 2017, State Farm and Progressive filed several motions, including one to bifurcate the trial on plaintiff's claims for PIP benefits and for uninsured motorist benefits.  The trial court entered an order granting the motions, stating that the trial would be initially limited to the issues of (1) whether plaintiff should have known that the motorcycle was stolen and thus, is precluded from receiving PIP benefits under MCL 500.3113(a), and (2) whether plaintiff was domiciled with his mother on the date of the accident.

Trial began on April 10, 2017, and voir dire continued the following day.  When the parties appeared on April 17, 2017, the trial court initiated a discussion about the interpretation of the priority statute, MCL 500.3114(5), questioning why the resident relative issue was pertinent.  Counsel for both Progressive and State Farm explained that if plaintiff was not domiciled with his mother, then State Farm is not the insurer of the operator of the motorcycle. The trial court repeatedly questioned whether there could be a "motor vehicle insurer of the operator of the motorcycle" under MCL 500.3114(5)(c) when plaintiff did not have an insurance policy himself and did not own a vehicle.  Progressive, plaintiff, and the intervenor maintained that if a person was entitled to no-fault coverage as a resident relative of a named insured, that insurer was the "motor vehicle insurer of the operator."  Counsel for Progressive also pointed out that if the trial court's logic were applied to similar language in MCL 500.3114(5)(d), then Progressive was not liable because Flores (the registered owner of the stolen motorcycle) was not a named insured.

The trial court ultimately concluded that State Farm could not be liable under MCL 500.3114(5)(c), and that Progressive could be liable as the motor vehicle insurer of the owner of the motorcycle, even though Flores was not named on his wife's policy.  The trial court reasoned:

> Let's go back to [MCL 500.3114(5)(c)].  [It] states that the motor vehicle insurer of the operator of the motorcycle.
>
> Okay.  The motor vehicle insurer doesn't exist because [plaintiff] did not own a vehicle and . . . as a result [he] did not did not have insurance on that vehicle.  How could he if he didn't own one?
>
> [Section 3114(5)(d)] indicates a motor vehicle insurer of the owner . . . of the motorcycle, assuming [Flores] owns a Chevy and the insurer of that Chevy would be responsible.

When plaintiff's counsel pointed out that if Progressive was determined to be not liable under MCL 500.3114(5)(d), then State Farm could potentially be liable under MCL 500.3114(1)

---

[4] State Farm also asserted in the response that it filed a motion for summary disposition "against" plaintiff on the issue of domicile, which was denied.

-4-

(resident relative), the trial court responded that State Farm could not be liable because Progressive was higher in priority. Having concluded that Progressive was the priority carrier, the trial court stated that it would order the case back for case evaluation. In the uninsured motorist portion of the case, the trial court indicated that it would schedule a hearing on whether plaintiff's mother had made a material misrepresentation about her residency that would make the policy void. As a result, the trial court entered an order stating that State Farm was excluded from the order of priority pursuant to MCL 500.3114(5)(c) and that Progressive was the highest priority insurer pursuant to MCL 500.3114(5)(d).

Progressive filed a motion for reconsideration, arguing that the trial court committed palpable error when it held State Farm was not plaintiff's "motor vehicle insurer" under MCL 500.3114(5)(c). Progressive primarily relied upon *Prishtina v ACIA*, unpublished per curiam opinion of the Court of Appeals, issued March 10, 2015 (Docket No. 318912). The trial court addressed Progressive's motion at a hearing, and noted that *Prishtina* was unpublished and that this case involved a different issue. Accordingly, the trial court denied Progressive's motion for reconsideration.

## II. ANALYSIS

For the reasons explained below, we hold that the trial court erroneously interpreted and applied MCL 500.3114(5)(c),[5] and erred when it concluded that State Farm could not possibly be the highest-priority insurer for plaintiff's PIP claim. "The proper interpretation and application of a statute is a question of law, which this Court reviews de novo." *Rogers v Wcisel*, 312 Mich App 79, 86; 877 NW2d 169 (2015).

As with many of the no-fault cases that have flooded Michigan courts in the last decade or so, the dispositive issue revolves around the priority provisions of the act. In particular, we must decide whether State Farm was properly determined to not have priority. "Generally, under MCL 500.3101(1) and MCL 500.3114(1), an individual must seek no-fault benefits from his own insurer unless one of the exceptions enumerated in MCL 500.3114(2), (3), or (5) applies." *Farmers Ins Exch v Farm Bureau Gen Ins Co*, 272 Mich App 106, 111; 724 NW2d 485 (2006). "The exception at issue here, MCL 500.3114(5), establishes the priority in which a motorcycle rider accidentally injured by a motor vehicle must claim no-fault benefits." *Id*. MCL 500.3114(5) provides:

> (5) A person suffering accidental bodily injury arising from a motor vehicle accident that shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:

---

[5] Progressive contends that this Court should "strike" State Farm's arguments regarding MCL 500.3114(5)(c) because State Farm did not raise these arguments below. Progressive's argument lacks merit. The issue was raised below, albeit by the trial court, and thus is preserved for this Court's review. See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 182-183; 521 NW2d 499 (1994).

(a) The insurer of the owner or registrant of the motor vehicle involved in the accident.

(b) The insurer of the operator of the motor vehicle involved in the accident.

(c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.

(d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.

A motorcycle is not a "motor vehicle" under the no-fault act. *Auto-Owners Ins Co v Hoadley*, 201 Mich App 555, 558-559; 506 NW2d 595 (1993). The term "vehicle" is a broader category that encompasses both motorcycles and motor vehicles; the term "motor vehicle" is a narrower category of vehicles that excludes motorcycles. *Id*. at 559. "Thus, while both motorcycles and motor vehicles are vehicles, a motorcycle is not a motor vehicle." *Id*.

All parties agree that subsections (a) and (b) of MCL 500.3114(5) cannot apply because the driver of the motor vehicle that struck plaintiff fled the accident and was not found. Thus, neither the owner nor operator of the motor vehicle that struck plaintiff is a known party. Rather, this case concerns the last two subsections. State Farm insures a motor vehicle owned by plaintiff's mother, Aida, and its policy extends coverage to family members who reside in Aida's household. According to Progressive, State Farm's policy covers plaintiff as a resident relative of Aida's household, and as such, State Farm would be the highest-priority insurer under MCL 500.3114(5)(c). In the trial court, State Farm disputed whether plaintiff resided with Aida, and contended that Progressive was the highest-priority insurer under MCL 500.3114(5)(d), as it insured the owner of the motorcycle.

The overall goal of statutory interpretation is to give effect to the intent of the Legislature. *Garfield Mart, Inc v Dep't of Treasury*, 320 Mich App 628, 643; 907 NW2d 880 (2017). "The best indicator of that intent is the plain and ordinary language used." *Id*. "In construing a statute, the Court must read the language as a whole, giving meaning to each word in the context of the statute." *Id*. "If the language is unambiguous, then the language must be applied as written." *Id*. This Court must avoid any construction of a statute that renders any part of the statute surplusage or nugatory. *Apsey v Mem Hosp*, 477 Mich 120, 127; 730 NW2d 695 (2007). It must also be remembered that the purpose of the no-fault act is to "keep[] insurance premiums at affordable rates while providing victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Joseph v ACIA*, 491 Mich 200, 217-218; 815 NW2d 412 (2012). Because the act is remedial, it must be construed liberally in favor of those who are the intended beneficiaries of the act. *Frierson v West American Ins Co*, 261 Mich App 732, 734; 683 NW2d 695 (2004). Specific terms of the no-fault act are read in context of the entire act. *Id*. "[C]ourts should not abandon common sense when construing a statute." *Id*. (quotation marks and citations omitted).

Our decision turns on the meaning of the phrase "motor vehicle insurer" in the context of MCL 500.3114(5). Progressive contends that the phrase "motor vehicle" does not restrict

coverage under MCL 500.3114(5)(c) or (d) only to instances where the motorcyclist owns and insures a separate motor vehicle. Rather, the phrase identifies the general category of insurer; it distinguishes an insurer providing coverage to a motor vehicle as opposed to an insurer providing a different type of coverage.

To understand MCL 500.3114(5), one must consider the context in which it comes into play: an accident involving both a motorcycle and a motor vehicle. Owners of motor vehicles are required by the no-fault act to carry PIP coverage, while owners of motorcycles are not. MCL 500.3101(1); *Perkins v Auto-Owners Ins Co*, 301 Mich App 658, 665-666; 837 NW2d 32 (2013). Pursuant to MCL 500.3103(2), motorcycle insurers are required to *offer* medical-benefits coverage to owners of motorcycles seeking a motorcycle insurance policy. But such benefits are not required, and are much more limited than the PIP benefits that must be provided in motor vehicle policies. Under MCL 500.3103(2), motorcyclists must be offered "security for the payment of first-party medical benefits only, in increments of $5,000.00, payable in the event the owner or registrant is involved in a motorcycle accident." In contrast, motor vehicle policies are required to include coverage for "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation," MCL 500.3107(1)(a), work-loss benefits, MCL 500.3107(1)(b), and replacement services of up to $20 each day for the first three years after the accident, MCL 500.3107(1)(c). Yet despite not requiring motorcyclists to obtain PIP coverage, our Legislature has extended PIP coverage to motorcyclists by statute, at least in instances where a motor vehicle is involved in an accident with a motorcyclist. *Perkins*, 301 Mich App at 665-666 n 10, citing MCL 500.3114(5). In other words, our Legislature has made a policy choice to provide motorcyclists with the more expansive PIP coverage whenever they are injured in an accident involving a motor vehicle, rather than being limited to the optional medical-benefits coverage motorcyclists may also choose to purchase.

With that in mind, it is quite clear that by using the phrase "motor vehicle insurer," the Legislature was simply delineating between the injured party's motorcycle policy and any applicable motor vehicle policies. Under MCL 500.3114(5), the first-priority insurer is "[t]he insurer of the owner or registrant of the motor vehicle involved in the accident." MCL 500.3114(5)(a). The second-priority insurer is "[t]he insurer of the operator of the motor vehicle involved in the accident." MCL 500.3114(5)(b). As these priority provisions speak to insurers of those owning or operating a motor vehicle, there was no need for the Legislature to include the additional description of "motor vehicle" before the word "insurer" in either MCL 500.3114(5)(a) or (b); that was the only type of insurer that could be at issue. But MCL 500.3114(5)(c) and (d) both focus on insurers of the motorcycle or its operator. MCL 500.3114(5)(c) makes the third-priority insurer the "*motor vehicle* insurer of the operator of the motorcycle," while MCL 500.3114(5)(d) makes the fourth-priority insurer the "*motor vehicle* insurer of the owner or registrant of the motorcycle . . . ." (Emphasis added.) The reason the Legislature included the phrase "motor vehicle" before the word "insurer" in each of these subsections is very apparent. Our Legislature was making clear that it was speaking of any motor vehicle policies that covered the motorcycle rider, which would be required to provide PIP coverage, not the separate motorcycle policy, which would not include PIP coverage at all. This is consistent with how we interpreted MCL 500.3114(5) in *Perkins*, 301 Mich App at 666, where this Court explained that "[u]nder MCL 500.3114(5), the motorcycle insurance policy is never the source of the payment of PIP benefits."

State Farm contends that it should be plainly obvious that MCL 500.3114(5)(c), and presumably, MCL 500.3114(5)(d), refer to motor vehicle insurers, and thus, there was no need for the Legislature to include the additional descriptor of "motor vehicle" in those subsections of the statute unless it intended for the phrase to have some additional meaning. According to State Farm, this additional meaning is what the trial court gave the statute: that MCL 500.3114(5)(c) only speaks to policies that specifically name the injured party as an insured. This argument fails for at least two reasons.

First, even assuming that it should be obvious to all that MCL 500.3114(5)(c) is speaking to motor vehicle policies and not motorcycle policies, a somewhat dubious assumption, this does not mean that the Legislature's choice of language is rendered nugatory by giving it that obvious meaning. Stated otherwise, that the Legislature chose to make the obvious clear does not mean that the clarifying language is meaningless. Second, had the Legislature wished to limit MCL 500.3114(5)(c) in the way State Farm suggests, it could have said so. For example, and as Progressive suggests, the Legislature could have written MCL 500.3114(5)(c) as stating, "The motor vehicle insurer of the named insured who operated the motorcycle involved in the accident." Alternatively, if the Legislature wished to prohibit motorcyclists from recovering no-fault benefits through a motor vehicle policy that names only a resident relative as the insured, it could have said as much. Ultimately, State Farm's position asks this Court to place a restriction in the statute that simply is not there. That goes beyond our judicial power. *Faircloth v Family Independence Agency*, 232 Mich App 391, 409; 591 NW2d 314 (1998).

When the Legislature spoke of a "motor vehicle insurer" in MCL 500.3114(5)(c) and (d), it was speaking of just that—a motor vehicle insurer. State Farm insures Aida's motor vehicle and, as such, is a motor vehicle insurer. What is left for the jury to decide is whether State Farm insures "the operator of the motorcycle"—plaintiff. In this regard, it is undisputed that State Farm's policy extends coverage to relatives of Aida residing in her household. Clearly, plaintiff is a relative of his mother. But it must be determined whether he is a resident of her household. Thus, before it may be determined whether State Farm is the priority insurer, the matter must be remanded to the trial court for a jury to answer the question that the parties intended to have answered through trial: whether plaintiff resided with Aida.[6]

The trial court's order is reversed, and this case is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[6] To be clear, the trial court must also obtain an answer to another question relevant to whether plaintiff may obtain benefits that was raised below: whether plaintiff is precluded from receiving PIP benefits under MCL 500.3113(a) because he knew the motorcycle was stolen at the time of the accident.

No costs to either side, the trial court having raised the issue on its own.  MCR 7.219(A).


/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher